IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JALIL SHAKUR REED,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    CIVIL ACTION NO. 26-CV-0425 |
| | : |
| KEVIN BONE, *et al.*,<br>    Defendants. | :<br>: |

<u>MEMORANDUM</u>

**GALLAGHER, J.**                                                                              **JANUARY 28, 2026**

        Jalil Shakur Reed ("Reed"), an inmate currently housed as SCI Fayette, filed this civil rights action against Chaplain Kevin Bone ("Bone") and Director of Inmate Services, Carl Clevenstine ("Clevenstine"), of the Montgomery County Correctional Facility ("MCCF"), as well as Rabbi Moishe Mayir Vogel ("Rabbi Vogel" or "Vogel") of the Aleph Institute and Rabbi Aryeh Blaut ("Rabbi Blaut") of Jewish Prisoner Services International ("JPSI"). Reed, who also seeks leave to proceed *in forma pauperis*, raises First Amendment and statutory claims. For the following reasons, leave to proceed *in forma pauperis* will be granted, and the Complaint will be dismissed in part with prejudice and in part without prejudice.

**I.**       **FACTUAL ALLEGATIONS**[1]

---

[1] The factual allegations are taken from Reed's Complaint (ECF No. 2), comprising the Court's preprinted form available for prisoners to use to file civil rights cases along with additional handwritten pages and several exhibits (ECF No. 2-1). The Court adopts the sequential pagination assigned by the CM/ECF docketing system and deems the entire submission to constitute the Complaint. On statutory screening, the Court may also consider publicly available court records. *Castro-Mota v. Smithson*, No. 20-940, 2020 WL 3104775, at *1 n.3 (E.D. Pa. June 11, 2020) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up as needed.

Reed was housed at MCCF in the fall of 2025 while awaiting trial on pending charges in the Montgomery County Court of Common Pleas.[2]  (Compl. at 4.)  On September 9, Bone declined to permit Reed "services in accordance with [his] religious belief" after Reed stated that he wanted "to participate in Rosh Hashana and the Fast of Gedaliah." (*Id*. at 5.)  Reed had complied with Defendant Bone's request to file a request slip and a membership application for Aleph Institute. (*Id*.)  Reed claims to have been faithfully practicing his religion for "half a decade" and needed Bone to "get the necessary items in order to properly perform [his] religious beliefs." (*Id*.)  Although Reed does not specify what items he needed, he claims Bone told him he was "not Jewish" and "Don't get mad at me because you're not Jewish."[3]  (*Id*. at 5-6.)

In response, Reed showed Bone a Pennsylvania Department of Corrections "DC1 Face Sheet" (attached to the Complaint as Exhibit G-1) indicating Reed's religion as Jewish.  (*Id*. at 6; ECF No. 2-1 at 2.)  Bone stated, "Just because your [sic] Jewish in one place doesn't make you Jewish here." (Compl. at 6.)  Bone handed him a document (attached to the Complaint as Exhibit G-2) that he apparently received from Rabbi Vogel of the Aleph Institute, in which Vogel stated to Bone that, based on Reed's responses to questions, "Yes, inmate Jalil Reed is not Jewish." (*Id*. at 6; ECF No. 2-1 at 3.)  Reed submitted a grievance over the incident. (Compl. at 6; ECF No. 2-1 at 1.)  On September 16, 2025, Bone instructed him to fill out an application from the JPSI.[4]  (Compl. at 6; ECF No. 2-1 at 13.)  Reed asked Bone "How does [MCCF] supply

---

[2] *See Commonwealth v. Reed*, CP-46-CR-0001233-2025 (C.P. Montgomery) (indicating conviction by guilty plea on September 24, 2025).

[3] Attached to the Complaint are several declarations of other inmates who claim to have heard Bone make these comments. (ECF No. 2-1 at 4-7.)

[4] On the JPSI application Reed indicated he converted to Judaism. (ECF No. 2-1 at 13.) While the application provides that details of the conversion should be entered on the reverse of the form, Reed did not submit the reverse of the form as an exhibit to his Complaint.

2

services for Muslim inmates but not for Jewish inmates?" to which Bone responded that there were more Muslim inmates than Jewish inmates "and to be honest I think your [sic] the 2nd Jewish inmate." (Compl. at 6.) Bone told Reed that MCCF "use[s] Aleph and JPSI. What they say goes. We don't have anything here for Jewish inmates." (*Id*.)

In a written response to Reed's grievance, Bone stated that upon his "initial claim that [Reed] was Jewish [and] registered with the Aleph Institute," Bone attempted to verify his eligibility for religious support. (ECF No. 2-1 at 9.) Bone emailed Rabbi Vogel who responded that Reed "was not registered." (*Id*. at 9, 10.) Bone obtained and gave Reed an application to the Aleph Institute that Bone submitted for him on September 8, 2025.[5] (*Id*. at 9, 11.) Aleph Institute's response stated that Reed's "application had been denied because he [was] not recognized as Jewish by their organization." (*Id*. at 9.) Bone stated that he explained the alternative religious support options available to Jewish inmates, including direct access to local rabbis. (*Id*.) Reed's grievance was denied by Defendant Clevenstine because "per all of the information provided by Chaplain Bone it [had] been determined that [Reed] would not be able to participate in Jewish Services at MCCF." (ECF No. 2-1 at 8.)

In response to Reed's application to JPSI, Rabbi Blaut responded to Bone that, after reading over the application several times, he had "a number of questions." (*Id*. at 14.) Rabbi Blaut tried to look up the Rabbi Admon mentioned by Reed but "could not find any such person." (*Id*.) He also questioned whether Reed was circumcised for his conversion and asked

---

[5] On the application Reed indicated that his biological mother, biological maternal grandmother, and biological father were all not Jewish. (ECF No. 2-1 at 11.) He claimed to have converted to Judaism on March 13, 2021 under the supervision of a Rabbi named Admon but did not know Rabbi Admon's synagogue. (*Id*.) Based on these responses Rabbi Vogel told Bone "Yes, inmate is not Jewish." (*Id*. at 12.)

3

how that was accomplished while Reed was incarcerated, as well as how he could have underwent the ritual mikva bath for the conversion while a prisoner. (*Id*.) Rabbi Blaut informed Bone that "Bottom line, based on the information provided, he does not meet our requirements for services." (*Id*.)

Reed asserts claims against the Defendants in their individual and official capacities for violation of his First Amendment free exercise rights under 42 U.S.C. § 1983,[6] violation of the Religious Freedom Restoration Act ("RFRA"), and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (Compl. at 2-3.) He seeks money damages as well as injunctive relief to prevent "employees [of MCCF] or anyone else to deprive someone of their fundamental constitutional rights." (*Id*. at 5.)

## II.    STANDARD OF REVIEW

The Court grants Reed leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[7] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

---

[6] Section 1983 is the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

[7] However, since Reed is incarcerated, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Plaintiff's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

The Court must also review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

Because Reed is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other

5

litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it by name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

### III. DISCUSSION

#### A. RFRA Claim

RFRA applies only to burdens on religious liberty imposed by the federal government and does not apply to burdens imposed by state and local governments. *See City of Boerne v. Flores*, 521 U.S. 507, 532-36 (1997). Because Reed has not alleged any imposition of his religious rights by the federal government, the RFRA claim is dismissed with prejudice. While RFRA does not apply, claims for violation of RLUIPA, which is discussed below, "allows prisoners 'to seek religious accommodations pursuant to the same standard as set forth in" RFRA. *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (quoting *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418, 436 (2006)); *Watson v. Christo*, 837 F. App'x 877, 881 n.6 (3d Cir. 2020) (stating that the "same standards apply in RFRA and RLUIPA cases," but RLUIPA applies "on a more limited category of governmental actions").

#### B. RLUIPA Claims

"Congress enacted RLUIPA . . . 'in order to provide very broad protection for religious liberty.'" *Holt*, 574 U.S. at 356 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014)); *see* 42 U.S.C. § 2000cc, *et seq.* The relevant portion of RLUIPA state that "'[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability,'

unless the government demonstrates that the burden is 'in furtherance of a compelling governmental interest" and is 'the least restrictive means of furthering that . . . interest.'" *Washington v. Klem*, 497 F.3d 272, 277 (3d Cir. 2007) (quoting 42 U.S.C. § 2000cc-1(a)). "For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Id.* at 280. "[A] prisoner's request for an accommodation [under RLUIPA] must be sincerely based on a religious belief and not some other motivation." *Holt*, 574 U.S. at 360-61.

RLUIPA does not provide a basis for claims against individual officials in their individual capacities. *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012). Accordingly, all individual capacity claims against the Defendants are dismissed with prejudice. Moreover, the "official capacity" claims against Rabbi Vogel and Rabbi Blaut are dismissed with prejudice because RLUIPA's money damages are only available against local governments and officials, and Rabbi Vogel and Rabbi Blaut do not appear to be government employees.[8] *Ali v. Carney*, No. 20-4320, 2020 WL 7335466, at *5 (E.D. Pa. Dec. 14, 2020) (permitting official capacity claim, essentially a claim against the City of Philadelphia, to proceed past screening); *Kelley Bey v. Keen*, No. 13-1942, 2014 WL 3563475, at *13 (M.D. Pa. July 17, 2014) (holding that official capacity RLUIPA

---

[8] Because there are no allegations in the Complaint that Rabbi Vogel and Rabbi Blaut are governmental employees, any Free Exercise Clause claim against them brought under § 1983 will also be dismissed with prejudice. *Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

claims against county officials was not barred by the Eleventh Amendment which only applies to states (citing *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 289-90 (5th Cir. 2012) (holding that while states may not be held liable for money damages under RLUIPA, municipalities and counties may)); *see also Coritsidis v. Khal Bnei Torah of Mount Ivy*, No. 22-10502, 2024 WL 37122, at *5 (S.D.N.Y. Jan. 3, 2024) ("[T]he statute does not permit enforcement against private persons such as Plaintiffs" because "RLUIPA's definition of 'government' does not include private individuals who are not acting under the authority of a state or under color of state law" (citing 42 U.S.C. § 2000cc-2(a) ("A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."); *id*. § 2000cc-5(4)(A) (RLUIPA's definition of "government"))).

Any claim for injunctive relief, be it under RLUIPA or as relief for a First Amendment violation against MCCF employees Bone and Clevenstine are also dismissed because Reed is now incarcerated at SCI Fayette and is no longer at MCCF.[9] When an inmate is transferred from the facility complained of, injunctive and declaratory claims are generally mooted, meaning the Court lacks jurisdiction to hear them. *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them" (quoting *Preiser v. Newkirk*, 422

---

[9] In his Complaint, Reed also asks for injunctive relief against "anyone else to deprive someone of their fundamental constitutional rights." (Compl. at 5.)  The Court has no power to enjoin "anyone else" not named as a defendant, let alone an unidentified "anyone else" against whom Reed has not stated a plausible claim for relief. *DiPietro v. Dep't of Corr. & Its Emps. Listed Herein*, No. 15-1137, 2017 WL 3722572, at *4 (M.D. Pa. Aug. 29, 2017) (holding that the Court "cannot grant injunctive relief against a non-party"). Nor can the Court grant relief on behalf of any "someone" who is not a plaintiff in this case since a *pro se* plaintiff cannot bring a claim on behalf of another person in federal court. *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007).

U.S. 395, 401 (1975) and citing *Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993) (holding that former inmate's claim that the prison library's legal resources were constitutionally inadequate was moot because plaintiff was released five months before trial).

    **C.**    **Remaining RLUIPA and Constitutional Claims**

The remaining RLUIPA claims are limited to the official capacity claims for money damages against Bone and Clevenstine. But these claims are undeveloped and cannot proceed at this time. Reed includes Defendant Clevenstine in the list of Defendants, identifying him as the Director of Inmate Services at MCCF, but only alleges in conclusory terms that he, along with Bone, sought the cooperation of Rabbi Vogel and Rabbi Blaut to deprive him of his constitutional rights. (Compl. at 4.) In other words, Reed does not explain how Clevenstine violated RLUIPA at all and his conclusory allegation of a constitutional violation is insufficient.[10] *Iqbal*, 556 U.S. at 678 (stating that conclusory allegations do not suffice to allege a plausible claim for relief).

Although Reed includes allegations about his interactions with Bone, he fails to allege plausibly that Bone created a substantial burden of his religious liberty. Reed claims he was not able to participate in Rosh Hashana and the Fast of Gedaliah because he needed Bone to "get the necessary items in order to properly perform [his] religious beliefs." (Compl. at 5.) But Reed does not specify what items he needed, let alone how Bone's actions forced him to choose between following his faith or forfeiting benefits otherwise generally available to other inmates, or pressured him to violate his beliefs. *Washington*, 497 F.3d at 280. In short, he has not alleged

---

[10] Although Reed does not specifically allege a constitutional claim against Clevenstine based on his involvement with his grievance (*see* ECF No. 2-1 at 8), any such claim would not be plausible since prisoners have no constitutional right to a grievance process. *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)).

facts to make plausible that he made a request for an accommodation under RLUIPA or that the request was based on a sincerely held religious belief and not some other motivation. *Holt*, 574 U.S. at 360-61.

RLUIPA offers greater protections for prisoner's religious exercise than the First Amendment. *See Holt*, 574 U.S. at 358. "Thus, a claim that cannot satisfy RLUIPA's threshold merits inquiry necessarily fails as to the First Amendment." *Adams v. Corr. Emergency Response Team*, No. 857 F. App'x 57, 60 (3d Cir. 2021) (*per curiam*) (citing *Koger v. Mohr*, 964 F.3d 532, 543 (6th Cir. 2020) (holding a failure to show substantial burden under RLUIPA precluded any genuine dispute of material fact on a free-exercise claim); *see also Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003) (stating that, for a First Amendment free exercise claim, "[a] prerequisite to the [examination of the challenged regulation] is the assertion of only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection. . . . The Constitution does not protect mere assertion[s] of . . . religious beliefs." (alterations in original) (quoting *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (*en banc*). (citation and internal quotation marks omitted)).

## IV.    CONCLUSION

For the reasons stated, Reed's Complaint will be dismissed. All claims for violation of RFRA, all individual capacity RLUIPA claims against the Defendants, the "official capacity" RLUIPA claims, and the § 1983 claims against Rabbi Vogel and Rabbi Blaut are dismissed with prejudice. All claims for injunctive relief are dismissed without prejudice and without leave to amend because they are moot. The remaining official capacity RLUIPA claims and First Amendment claims against Bone and Clevenstine are dismissed without prejudice. Reed may file an Amended Complaint to reassert his claims against Bone and Clevenstine if he is able to

allege additional facts to make the claims plausible.  An Order will be entered providing Reed with information regarding the filing an Amended Complaint.

                              **BY THE COURT:**

                        ***/s/ John M. Gallagher***
                        **JOHN M. GALLAGHER, J.**