## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JALIL SHAKUR REED, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 26-CV-0425 |
| | : | |
| KEVIN BONE, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

**GALLAGHER, J.**                                                           **May 26, 2026**

In a prior Memorandum, the Court dismissed the Complaint filed by Jalil Shakur Reed ("Reed"), an inmate currently housed at SCI Fayette, alleging statutory and First Amendment and related civil rights claims under 42 U.S.C. § 1983 arising from the time he was a detainee at Montgomery County Correctional Facility ("MCCF").  *See Reed v. Bone*, No. 26-425, 2026 WL 221857 (E.D. Pa. Jan. 28, 2026) (*Reed I*).  All claims for violation of the Religious Freedom Restoration Act ("RFRA"), all individual capacity claims for violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the "official capacity" RLUIPA claims and § 1983 claims against Defendants Rabbi Moishe Mayir Vogel of the Aleph Institute and Rabbi Aryeh Blaut of Jewish Prisoner Services International ("JPSI") were dismissed with prejudice.  All claims for injunctive relief were dismissed as moot since Reed was no longer at MCCF.  The remaining official capacity RLUIPA claims and First Amendment claims against Defendants Chaplain Kevin Bone ("Bone") and Director of Inmate Services Carl Clevenstine ("Clevenstine") were dismissed without prejudice.  Reed was granted leave to file an amended complaint to reassert those claims against Bone and Clevenstine if he was able to allege additional facts to make the claims plausible.

Reed has returned with an Amended Complaint realleging his RLUIPA and First Amendment claims, adding Montgomery County as a Defendant, and reasserting claims that were previously dismissed with prejudice.  (ECF No. 16.)  For the following reasons, Reed's renewed request for injunctive relief[1] and the claims previously dismissed with prejudice will again be dismissed with prejudice for the reasons previously expressed.[2]  The official capacity RLUIPA claims against Bone and Clevenstine will be dismissed as duplicative of the newly added claim against Montgomery County, *see Butler v. Lehigh Cnty. Jail*, No. 22-229, 2022 WL 462405, at *6 (E.D. Pa. Feb. 15, 2022) (dismissing official capacity RLUIPA claims against employee defendants as duplicative of RLUIPA claims against Lehigh County).  The remaining claims will be served for a responsive pleading.

---

[1] Reed seeks injunctive relief to prevent the Defendants from treating other inmates in the manner in which he was treated, (*see* Am. Compl. at 6), but he may not do so.  Although an individual may represent himself *pro se*, a non-attorney may not seek relief for other parties in federal court.  *Murray ex rel. Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018); *see also Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007).

[2] To the extent that Reed attempts to reassert claims under RFRA, they are again dismissed for the reasons stated in *Reed I*, namely that RFRA applies only to burdens on religious liberty imposed by the federal government and does not apply to burdens imposed by state and local governments.  *Reed I*, 2026 WL 221857 at *3 (citing *City of Boerne v. Flores*, 521 U.S. 507, 532-36 (1997)).  Additionally, to the extent Reed names individual Defendants in their official capacities, RLUIPA does not provide a basis for claims against government employees in their individual capacities.  *Id.* at *4 (citing *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012)).

I.    FACTUAL ALLEGATIONS[3]

Reed was housed at MCCF in the fall of 2025 while awaiting trial on pending charges in the Montgomery County Court of Common Pleas.[4]  (Compl. at 4.)  By way of background, in his original Complaint, he alleged that Bone and Clevenstine refused to provide him with Jewish religious services because they refused to recognize that he was Jewish.  (*See generally id*.)  Although Reed showed Bone a Pennsylvania Department of Corrections "DC1 Face Sheet" (Am. Compl. at 25; Compl. Exh. G-1) indicating Reed's religion as Jewish, Bone relied upon a document (Am. Compl. at 35; Compl. Exh. G-2) that Bone apparently received from Rabbi Vogel of the Aleph Institute, in which Vogel opined to Bone that, based on Reed's responses to questions on his membership application, "Yes, inmate [Jalil Reed] is not Jewish."  (Am. Compl. at 35; *see also id* at 34 (Aleph Institute membership application).)

In the Amended Complaint, Reed again asserts that on September 9, 2025, he "requested ritual food services and biblical reading material(s) such as but not limited to Kosher meal(s), weekly Torah(s), biblical studies, special ritual food(s) for Rosh Hashana & the Fast of Gedaliah along with any and all biblical reading materials authorized for Jewish inmate(s)."  (Am. Compl. at 6.)  Reed states that "Rosh Hashana is the birthday of the universe, the day God created Adam and Eve, and is celebrated as the Jewish year.  The Fast of Gedaliah I'm supposed to abstain

---

[3] Unless otherwise stated, the factual allegations are taken from Reed's Amended Complaint (ECF No. 16).  The Court adopts the sequential pagination assigned by the CM/ECF docketing system.  On statutory screening, the Court may also consider publicly available court records.  *Castro-Mota v. Smithson*, No. 20-940, 2020 WL 3104775, at *1 n.3 (E.D. Pa. June 11, 2020) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).  Where the Court quotes from the Amended Complaint, punctuation, spelling, and capitalization errors will be cleaned up if needed for clarity.  The Court notes that Reed's handwriting is difficult to read.

[4] *See Commonwealth v. Reed*, CP-46-CR-0001233-2025 (C.P. Montgomery) (indicating conviction by guilty plea on 09/24/2025).

from food and water (drinks of any kind) from dawn to nightfall which I then use Selichot prayers." (*Id*.)  Reed needed Bone and Clevenstine to arrange for bagged Kosher meals and "to get the necessary items in order for [him] to properly perform [his] religious beliefs." (*Id*. at 6, 7.)  When Reed asked Bone and Clevenstine to arrange for bag meals of kosher food, Bone told him "'whatever Aleph & JPSI says goes' meaning I was foreclosed any opportunity to practice, observe my holy days maybe if I was Muslim I'd be just fine . . ." (*Id*. at 6.)  Reed filled out the Aleph & JPSI membership applications, leading to Rabbi Vogel telling Bone that Reed was not Jewish, and leading Bone to therefore refuse to render him religious services.[5]  (*Id*.)

Bone allegedly stated, "Don't get mad at me because you're not Jewish," leading Reed to experience anger but again asked respectfully about Rosh Hashana and the Fast of Gedaliah.  (*Id*. at 7.)  Bone stated, "We will not be giving you anything," and when Reed showed him the PA DOC designation Bone stated, "Just because your Jewish in one place doesn't make you Jewish here." (*Id*.)  On September 16, 2025, Bone told Reed to fill out another application, this time for JPSI.  (*Id*. at 8.)  Reed asked Bone about why Muslim prisoners are provided services but not Jewish inmates.  (*Id*.)  Bone responded that there were more Muslim inmates and that Reed was only the second Jewish inmate at MCCF.  (*Id*.)  Reed asserts based on this statement that if he

---

[5] In the original Complaint, Reed alleged that in response to his application to JPSI, Rabbi Blaut responded to Bone that, after reading over the application several times, he had "a number of questions." (Compl. at 14.)  Rabbi Blaut tried to look up the "Rabbi Admon" mentioned in Reed's application but "could not find any such person."  (*Id*.) He also questioned whether Reed was circumcised for his conversion and asked how that was accomplished while Reed was incarcerated, as well as how he could have underwent the ritual mikva bath for the conversion while a prisoner.  (*Id*.)  Rabbi Blaut informed Bone that "Bottom line, based on the information provided, he does not meet our requirements for services."  (*Id*.)

Reed did not include these allegations in narrative form in the Amended Complaint but did attach the same JPSI membership application and response from Rabbi Blaut.  (Am. Compl. at 36, 37.)

were Muslim he would be able to practice and participate in his faith.  (*Id.*)  Bone said he used

the response he received from Rabbi Vogel that Reed was not Jewish in his decision to deny

services and said, "we don't have anything here for Jewish inmates."  (*Id.*)  Reed questions

whether, because Rabbi Vogel worked with Bone, he has "interdependence" with a state actor.

(*Id.* at 8, 10.)  While he does not allege in the Amended Complaint that Rabbi Blaut took any

action or what happened to the JPSI membership application, he claims that the two Rabbis both

exercised powers that are traditionally the exclusive prerogative of the state.  (*Id.* at 9.)

On September 19, Defendant Clevenstine stated that Reed would not be permitted to

participate in in Jewish services at MCCF.  (*Id.* at 9.)   Reed asserts that Clevenstine and Bone

violated his constitutional right to participate and practice his faith under the First Amendment,

the Pennsylvania Constitution, and RLUIPA.[6]  (*Id.* at 9-10.)  He alleges that Clevenstine refused

him ritual religious food, services, biblical reading materials and he was told by Clevenstine and

Bone that he would have to purchase a Jewish bible and Torah while, Reed contends, Muslim

and Christian inmates were provided religious texts at no charge.  (*Id.* at 11.)  Reed claims he

---

[6] Any claim brought under the Pennsylvania Constitution will be dismissed because "Pennsylvania does not recognize a private right of action for damages in a lawsuit alleging a violation of the Pennsylvania Constitution."  *Moss v. Pennsylvania*, 838 F. App'x. 702, 708 (3d Cir. 2020) (*per curiam*) (citing *Jones v. City of Philadelphia*, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) ("[N]either Pennsylvania statutory authority nor appellate case law has authorized the award of money damages for violation of the Pennsylvania Constitution.")); *see also Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (*per curiam*) ("Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution."); *Spriggs v. Salamon*, No. 23-1756 , 2024 WL 5239879, at *6 (E.D. Pa. Dec. 27, 2024) (same, collecting non-precedential decisions of the United States Court of Appeals for the Third Circuit).

had to forfeit his right to engage in Rosh Hashana and the Fast of Gedaliah and had to eat non-kosher foods due to the Defendants' actions because he had nothing else to eat.[7] (*Id.*)

## II.   STANDARD OF REVIEW

Since Reed is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* Amended Complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the Amended Complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  Because Reed is proceeding *pro se*, the Court construes his allegations liberally.  *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally

---

[7] Reed appended a Memorandum of Law to his Amended Complaint that includes arguments about why his claims are plausible but does not allege additional factual allegations. (Am. Compl. at 38-42.)

construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.   DISCUSSION

Although the Court previously dismissed the First Amendment and RLUIPA claims against Rabbi Vogel and Rabbi Blaut with prejudice, Reed reasserted them in the Amended Complaint.  To the extent the inclusion of the claims can be deemed to be a motion for reconsideration of the order dismissing the Defendants with prejudice, the motion is denied. Local Rule 7.1(g) provides that a motion for reconsideration must be filed within 14 days after the entry of the order concerned, other than those governed by Federal Rule of Civil Procedure 59(e).  Thus, the Local Rule applies to interlocutory orders including where cases are screened under 28 U.S.C. § 1915(e)(2)(B)(ii) resulting in only a partial dismissal of claims or a dismissal without prejudice and with leave to file an amended complaint.  The Court's Order dismissing Rabbi Vogel and Rabbi Blaut fall under this provision since the Order resulted in an only partial dismissal of claims.

Even if filed timely, any such motion for reconsideration would be meritless. Reconsideration may be granted where there is "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *United States ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848–89 (3d Cir. 2014) (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). The two Rabbis were dismissed because they are not "state actors" within the meaning of

§ 1983 or subject to liability under RLUIPA and, for the reasons that follow, there is no need to correct an error of fact or law.

Reed alleges in conclusory terms at best that Rabbi Vogel had "interdependence" with a state actor, making him also a state actor for purposes of § 1983. (*Id*. at 8, 10.) He also claims in conclusory terms that the two Rabbis exercised powers that are traditionally the exclusive prerogative of the state, making them state actors for purposes of § 1983. (*Id*. at 9.) In his non-conclusory allegations, Reed claims that Rabbi Vogel was allegedly consulted by prison officials to determine whether he was entitled to services as a Jewish detainee at MCCF and thus should be permitted to celebrate of Jewish holidays and rituals, and receive support services including kosher food. Rabbi Vogel opined based on the information Reed provided in his membership application that he was not Jewish by birth or conversion. (*See* Am. Compl. at 34 (Aleph membership application indicating that neither of Reed's parents was Jewish by birth or conversion).) As noted, Reed fails to include any narrative allegations with regard to Rabbi Blaut or what happened with his membership application to JPSI, even though he attached the documents to his pleading. The non-conclusory allegations contained in the Amended Complaint do not add any additional information to what Reed alleged previously and, accordingly, Reed fails to demonstrate that the Court's previous holding that the Rabbis were not state actors was factually erroneous.

Neither has he shown any error of law. Whether a defendant is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotation marks omitted). "To answer that question, [the Third Circuit has] outlined three broad

tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotation marks and alteration omitted). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Rather, to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

Reed asserts both that Rabbi Vogel and Rabbi Blaut have insinuated themselves into positions of interdependence with MCCF and exercised powers of the state. The issue of whether an outside religious authority can be held liable as a "state actor" under § 1983, where the person is consulted by prison officials about an ecclesiastical matter such as who is a member of their faith but who is not otherwise involved with a penal institution, does not appear to have been yet addressed by the United States Court of Appeals for the Third Circuit. *See Drew v. Walton*, No. 18-1452, 2021 WL 2155448, at *6 (W.D. Pa. May 27, 2021). But in *Montano v. Hedgepeth*, 120 F.3d 844 (8th Cir. 1997), the United States Court of Appeals for the Eighth Circuit held that prison chaplains are not state actors when engaged in purely ecclesiastical functions. In that case, an inmate claimed that the prison chaplain violated his First Amendment right to freely exercise his religion when the chaplain barred him from attending Protestant

9

religious services because of the inmate's religious beliefs.[8]  The Court held that the inmate's

First Amendment claim against the chaplain failed as a matter of law, holding "that a prison

chaplain, even if a full-time state employee, is not a state actor when he engages in *inherently*

*ecclesiastical functions* (that is, when he performs spiritual duties as a leader in his church)."  *Id.*,

120 F.3d at 851 (footnote omitted) (emphasis added).  It explained:

> Just as a public defender performs many functions which are free from the
> shackles of state control, a prison chaplain, although a state employee, sometimes
> behaves in ways which are beyond the bounds of governmental authority.  In the
> matters of faith, a pastor, probably even more so than an attorney acting on behalf
> of a client, is not answerable to an administrative supervisor.  The teachings
> endorsed and practiced by recognized spiritual leaders are not, and should not be,
> subject to governmental pressures, and the canons which underlie most of the
> world's denominations are typically thought to derive from divine, rather than
> worldly, inspiration. . . .  It is hard to imagine any greater affront to the First
> Amendment than a state's attempt to influence a prison chaplain's interpretation
> and application of religious dogma.  During the course of his employment, a
> prison chaplain might, among many other things, deliver sermons, take
> confessions, grant forgiveness for sins, and counsel inmates on the proper reading
> of sacred texts.  It is peculiarly difficult to detect any color of state law in such
> activities.

*Id.* at 850.

The United States Court of Appeals for the Ninth Circuit has also held that a contract

Jewish chaplain was not a state actor for First Amendment purposes based on an ecclesiastical

determination that an inmate was not Jewish and thus denied the inmate's request for a Torah,

Jewish calendar, and visits from a rabbi.  *Florer v. Congregation Pidyon Shevuyim*, 639 F.3d

916, 923 (9th Cir. 2011) ("Florer alleges that he was deprived of his free exercise rights by

Defendants' policy of only providing religious materials and rabbi visits to individuals that

---

[8] Prior to being excluded from Protestant services, Montano, who identified as an adherent of Messianic Judaism, had been excluded from Jewish services because the institution's religious consultant for Judaism informed officials that Messianic Judaism is "basically a Christian organization" with teachings "contrary to Judaism" and asked the prison chaplain to prevent Messianic Jews from attending traditional Jewish observances.  *Montano*, 120 F.3d at 846.

Defendants determined were Jewish according to particular criteria.  But if Defendants [a Congregation that provided services to state inmates, its rabbi, and JPSI] indeed have such a policy, it is their own: it is not the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." (internal quotation marks omitted)).

Notably, Reed does not allege that Rabbi Vogel or Rabbi Blaut were providing religious services to MCCF inmates, either as employees or contractors.  Thus, those cases finding that a prison chaplain can be a state actor when doing so are largely inapposite.  *See*, *e.g.*, *Stubbs v. DeRose*, No. 03-2362, 2007 WL 776789, at *5 (M.D. Pa. March 12, 2007) (finding on a motion for summary judgment that the defendant, a full-time prison chaplain, was a state actor, where, *inter alia*, "his day-to-day activities were supervised by [the warden and deputy warden at the prison] where he worked full time, maintained an office, and was permitted to be present in areas of the prison that would be off-limits to members of the public"); *Drew*, 2021 WL 2155448, at *6 (citing *Stubbs* and holding "the County of Westmoreland contracted with Chaplain Badamo to provide religious services to prisoners, thereby delegating to him the responsibility to provide religious services to inmates and in doing so, granted him broad access to the inmates when providing such services.  Based on the summary judgment record evidence, the Court has no hesitancy in finding that Defendant Badamo should be considered a state actor in this case."); *Phelps v. Dunn*, 965 F.2d 93, 102 (6th Cir. 1992) (holding that the volunteer prison chaplain was a state actor because he signed a contract agreeing to operate under all institutional policies and procedures, functioned within the institutional structure of chapel command, and was not merely a guest or visitor).  Rather, Reed bases his claim of state action exclusively on the Rabbis' consultation with prison officials on the ecclesiastic determination of whether Reed was Jewish.

11

As such, neither can be deemed liable for a constitutional violation as a "state actor" under § 1983 since they are not state employees.

## IV.    CONCLUSION

For the reasons stated, Reed's RFRA claim, all individual capacity RLUIPA claims against the Defendants, the duplicative official capacity RLUIPA claims against Bone and Clevenstine, any claim under the Pennsylvania Constitution, any request for injunctive relief on behalf of others, and all claims against Rabbi Vogel and Rabbi Blaut are dismissed with prejudice.  The remaining RLUIPA claim against Montgomery County and First Amendment claims against Bone and Clevenstine will proceed to service.  An appropriate Order follows.


BY THE COURT:


/s/ John M. Gallagher
JOHN M. GALLAGHER
United States District Court Judge

12