**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JALIL SHAKUR REED,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-0425** |
| | : | |
| **KEVIN BONE, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**GALLAGHER, J.** **SEPTEMBER 11, 2026**

Presently pending is a motion by Defendants Montgomery County, Kevin Bone, and Carl Clevenstine to dismiss the Amended Complaint filed by Jalil Shakur Reed, an inmate currently housed at SCI Frackville. Reed's claims arise from the time he was housed at Montgomery County Correctional Facility (MCCF) as a pretrial detainee. Upon screening the Amended Complaint, the Court directed service of Reed's claim against Montgomery County alleging violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), as well as his individual capacity First Amendment free exercise claims against MCCF Chaplain Bone ("Bone") and MCCF Director of Inmate Services Clevenstine ("Clevenstine").[1] *See* ECF No. 20 ("The remaining RLUIPA claim against Montgomery County and First Amendment claims

[1] On screening the Amended Complaint, the Court dismissed individual capacity RLUIPA claims against Bone and Clevenstine, as well as the claims that Reed reasserted against non-state actors, Rabbi Vogel of the Aleph Institute and Rabbi Blaut of Jewish Prisoner Service International (JPSI). *See Reed v. Bone*, No. 26-425, 2026 WL 1465400, at *5 (E.D. Pa. May 26, 2026). The Court had previously dismissed the claims against the two rabbis that Reed asserted in his original Complaint. *See Reed v. Bone*, No. 26-425, 2026 WL 221857, at *4 (E.D. Pa. Jan. 28, 2026) ("Moreover, the 'official capacity' claims against Rabbi Vogel and Rabbi Blaut are dismissed with prejudice because RLUIPA's money damages are only available against local governments and officials, and Rabbi Vogel and Rabbi Blaut do not appear to be government employees.").

against Bone and Clevenstine will proceed to service.”). All Defendants now move to dismiss the Amended Complaint (ECF No. 26), to which Reed has filed a Response (ECF No. 29). As explained here, the motion is denied. The Court also denies Reed’s motion for sanctions (ECF No. 31).[2]

## I. FACTUAL ALLEGATIONS[3]

Reed was housed at MCCF in the fall of 2025 while awaiting trial on pending charges in the Montgomery County Court of Common Pleas.[4] (Compl. at 4.) Reed alleged in his initial Complaint that Bone and Clevenstine refused to provide him with Jewish religious accommodations because they would not recognize that he identifies as Jewish. *See generally id.*

[2] In his motion, Reed argues that, because the Court determined his claims were sufficiently plausible on statutory screening to have been served on the Defendants, their filing a motion under Rule 12 was frivolous, sanctionable conduct. In deciding whether to impose Rule 11(c) sanctions, a court must assess whether the conduct was reasonable under the circumstances. *CT Install Am., LLC v. Boryszewski*, No. 22-4557, 2024 WL 4582885 (E.D. Pa. Oct. 25, 2024) (citing *Bus. Guides, Inc. v. Chromatic Commc’ns Ents., Inc.*, 498 U.S. 533, 551 (1991)); *see also Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010), *as amended* (Dec. 7, 2010). The United States Court of Appeals for the Third Circuit defines reasonableness as “‘objective knowledge or belief at the time of the filing of the challenged paper’ that the claim was well-grounded in law and fact.” *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (quoting *Jones v. Pittsburgh Nat. Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990)). The Defendants’ motion, while asserting unsuccessful arguments, does not rise to this level. The Court’s determination to serve for a response a complaint subject to statutory screening does not curtail a defendant’s opportunity to raise a defense by way of motion or otherwise under the Federal Rules of Civil Procedure.

[3] Unless otherwise stated, the factual allegations are taken from Reed’s Amended Complaint (ECF No. 16). The Court adopts the sequential pagination assigned by the CM/ECF docketing system to all *pro se* pleadings. On statutory screening, the Court may also consider publicly available court records. *Castro-Mota v. Smithson*, No. 20-940, 2020 WL 3104775, at *1 n.3 (E.D. Pa. June 11, 2020) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). Where the Court quotes from the Amended Complaint, punctuation, spelling, and capitalization errors will be cleaned up if needed for clarity. The Court notes that Reed’s handwriting is difficult to read.

[4] *See Commonwealth v. Reed*, CP-46-CR-0001233-2025 (C.P. Montgomery) (indicating conviction by guilty plea on 09/24/2025).

Reed showed Bone a Pennsylvania Department of Corrections "DC1 Face Sheet" that indicates Reed's religion as Jewish. (Am. Compl. at 25; Compl. Ex. G-1). Bone however relied upon an email from Rabbi Vogel who opined to Bone that, based on Reed's responses to questions on his membership application (Am. Compl. at 34), "Reed is not Jewish," (Am. Compl. at 26, 35; Compl. Ex. G-2).

In his Amended Complaint, Reed alleges that Bone and Clevenstine were employees of MCCF. (Am. Compl. at 4.) On September 9, 2025, he "requested ritual food services and biblical reading material(s) such as but not limited to Kosher meal(s), weekly Torah(s), biblical studies, special ritual food(s) for Rosh Hashana & the Fast of Gedaliah along with any and all biblical reading materials authorized for Jewish inmate(s)." *Id*. at 6. He asserts he is Jewish and has faithfully practiced his religion for half a decade. *Id*. at 7. Reed stated that "Rosh Hashana is the birthday of the universe, the day G-d created Adam and Eve, and is celebrated as the head of the Jewish year. The Fast of Gedaliah I'm supposed to abstain from food and water (drinks of any kind) from dawn to nightfall . . . ." *Id*. at 6. Reed needed Bone and Clevenstine to arrange for bagged Kosher meals and "to get the necessary items in order for [him] to properly perform [his] religious beliefs." *Id*. at 6, 7. When Reed asked Bone and Clevenstine to arrange for bag meals of kosher food, Bone told him "whatever Aleph & JPSI says goes," which Reeds claims made him "foreclosed [of] any opportunity to practice, observe my holy days[.] Maybe if I was Muslim I'd be just fine . . . ." *Id*. at 6. Reed filled out the Aleph & JPSI membership applications, after which Rabbi Vogel told Bone that Reed was not Jewish and therefore Bone refused to render him religious services.[5] *Id.*

[5] In the initial Complaint, Reed alleged that in response to his JPSI application, Rabbi Blaut told Bone that he had "a number of questions." (Am. Compl. at 37.) Rabbi Blaut tried to look up the "Rabbi Admon" mentioned in Reed's application but "could not find any such person." *Id.* He

Bone allegedly stated, "Don't get mad at me because you're not Jewish," leading Reed to experience anger, but he again asked respectfully about Rosh Hashana and the Fast of Gedaliah. *Id.* at 7. Bone replied, "We will not be giving you anything," and when Reed showed him the PA DOC designation, Bone added, "Just because your [sic] Jewish in one place doesn't make you Jewish here." *Id.* On September 16, 2025, Bone told Reed to fill out another application, this time for JPSI. *Id.* at 8. Reed asked Bone about why Muslim prisoners are provided services but not Jewish inmates. *Id.* Bone responded that there were more Muslim inmates and that Reed was only the second Jewish inmate at MCCF. *Id.* Reed asserted based on this statement that, if he were Muslim, he would have been able to practice and participate in his faith. *Id.* Bone said he used the response he received from Rabbi Vogel that Reed was not Jewish in his decision to deny services and that, "we don't have anything here for Jewish inmates." *Id.* On September 19, Defendant Clevenstine stated that Reed would not be permitted to participate in Jewish services at MCCF. *Id.* at 9.

Reed asserts that Bone and Clevenstine violated his constitutional right to practice and participate in his faith under the First Amendment and that Montgomery County violated RLUIPA. In their Motion, Bone and Clevenstine seek dismissal of the remaining First Amendment claims against them. Bone argues that Reed's free exercise claim is not plausible because he was engaging in purely ecclesiastical functions when he determined that Reed was not Jewish, so he cannot be deemed a state actor when he performed that function. (Mot. at 7–9.)

---

questioned whether Reed was circumcised and whether he underwent the ritual *mikva* bath for the conversion process, asking how these steps could be accomplished while Reed was incarcerated. *Id.* Rabbi Blaut informed Bone: "Bottom line, based on the information provided, he does not meet our requirements for services." *Id.* Reed did not include these allegations in narrative form in the Amended Complaint, he but did attach the JPSI membership application and response from Rabbi Blaut. (Am. Compl. at 36–37.)

Clevenstine argues that the free exercise claim against him is not plausible because he relied upon the opinions of the rabbis whom he consulted, and he based his decision that Reed did not qualify for religious meals and services based on the rabbis' determination that Reed is not Jewish. *Id.* at 10–11. Montgomery County makes the largely inapposite argument that Reed failed to plausibly allege that a policy or custom of Montgomery County caused a violation of his constitutional rights and therefore is not liable under 42 U.S.C. § 1983 and the doctrine of *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (Mot. at 7-9.) It fails to raise any argument about the claim that was actually served for a response, namely that it violated RLUIPA.[6]

## II. STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Peters v. Brown,* 793 F. App'x 118, 123 (3d Cir. 2019) (*per curiam*) (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (internal quotations omitted)). In ruling on a Rule 12(b)(6) motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

[6] The relevant portion of RLUIPA creates a cause of action imposing liability on state and local governments independent of any liability they may have for a constitutional violation under § 1983 via *Monell*. It provides that "'[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability,' unless the government demonstrates that the burden is 'in furtherance of a compelling governmental interest' and is 'the least restrictive means of furthering that . . . interest.'" *Washington v. Klem*, 497 F.3d 272, 277 (3d Cir. 2007) (quoting 42 U.S.C. § 2000cc-1(a)) (alteration and omission in original); *cf. Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 460 (6th Cir. 2019) (stating that "RLUIPA creates an individually enforceable right" and distinguishing the causes of action and remedies available under RLUIPA from those under §1983). It is unclear to the Court whether Montgomery County has conflated RLUIPA with a § 1983 doctrine or failed to grasp that only the RLUIPA claim was served for a response.

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

## III. DISCUSSION

### A. Chaplain Bone

Bone argues that Reed's free exercise claim, asserted under § 1983, is not plausible because Bone was not a state actor when he determined in his role as the MCCF Chaplain that Reed was not Jewish based on the information he received from the outside rabbinical authority. In his argument, Bone relies on the Court's prior discussion of *Monsanto v. Hedgepeth*, 120 F.3d 844 (8th Cir. 1997), to the effect that prison chaplains are not state actors when engaged in purely ecclesiastical functions even if they are full-time state employees. *See Reed*, 2026 WL 1465400, at *5. In determining that Reed's restated claims against the outside rabbinical authority of Rabbi Vogel and Rabbi Blaut were implausible, the Court cited *Monsanto* and other cases distinguishing between cases where defendants engaged in ecclesiastical functions—such as determining who is a member of a faith—and other cases that held full-time prison chaplains were state actors. *Id.* Specifically, the Court found that "cases finding that a prison chaplain can

be a state actor when [providing religious services in correctional facilities were] largely inapposite" to Rabbi Vogel and Rabbi Blaut. *Id*. These distinguished cases, decided on summary judgment and a fully developed factual record, held that full-time chaplains were state actors where they, for example, were supervised by prison managers in their day-to-day activities, maintained offices within the institutions, were permitted to be present in areas of the prison that were off-limits to the public, were granted broad access to inmates, were under contractual obligations to operate within institutional policies and procedures, or functioned within the institutional chain of command. *Id.* (collecting cases emphasizing these factors). Rabbi Vogel and Rabbi Blaut, in contrast, were held to not be state actors because Reed based his claim against them exclusively on their consultations with prison officials on the ecclesiastical determination of whether Reed was Jewish. *Id.*

In contrast to the outside rabbis—and similar to the cases finding the named defendant-chaplain is a state actor—Reed alleges that Bone was employed at MCCF and violated his free exercise rights by denying him religious services within the institution (Am. Compl. at 4, 6). While the record may eventually establish that Bone denied him services based solely on his consultation with outside authority in making a determination of an ecclesiastical question, the issue of whether Bone qualified as a state actor when he denied Reed religious services, and whether he was implementing an institutional policy rather than a religious policy, is plausible on the face of the claim for relief, and a conclusion on this issue is best made on a fully developed record. *See, e.g.*, *Drew v. Walton*, No. 18-1452, 2021 WL 2155448, at *6 (W.D. Pa. May 27, 2021) (concluding that a chaplain was a state actor "[b]ased on the summary judgment record evidence," which demonstrated that a chaplain's contract with a county "delegate[ed] to

him the responsibility to provide religious services to inmates and in doing so, granted him broad access to the inmates when providing such services").

Bone's reliance on the Court's reasoning regarding the consultive actions of Rabbi Vogel and Rabbi Blaut fails to account for Reed's differing allegations about Bone. For example, he alleges that he showed Bone a document from the Pennsylvania DOC indicating he was Jewish, but Bone apparently did not accept it, telling Reed, "Just because your [sic] Jewish in one place doesn't make you Jewish here." (Am. Compl. at 7.) In Reed's telling, Bone also allegedly contrasted the scant number of Jewish inmates at MCCF with the large number of Muslim inmates, *id*. at 8, raising a factual inference that non-ecclesiastical considerations like costs and logistics might have influenced the decision to deny him religious meals, materials, and services, regardless of whether he was determined to be Jewish. Therefore, the Motion is denied as applied to Bone's argument.

**B. Assistant Director Clevenstine**

Clevenstine argues that the free exercise claim against him should be dismissed under *Turner v. Safley*, 482 U.S. 78 (1987) (setting forth the factors used in determining the reasonableness of a particular prison regulation impacting free exercise rights) and *DeHart v. Horn*, 227 F.3d 47 (3d Cir. 2000). In *DeHart*, the United States Court of Appeals for the Third Circuit held that

> the *Turner* analysis is appropriate only in cases where a prison policy is impinging on inmates' constitutional rights. *Turner*, thus, assumes as a predicate that the plaintiff inmate has demonstrated that a constitutionally protected interest is at stake. In this case, DeHart asserts that his dietary requirements are derived from his Buddhist beliefs, thus implicating the First Amendment's guarantee of the free exercise of one's religion. The mere assertion of a religious belief does not automatically trigger First Amendment protections, however. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection.

*Id.* at 51. Clevenstine argues that since outside rabbinical authority determined that Reed was not Jewish, and he relied on that authority in responding to Reed's request for kosher food, Jewish services, and biblical reading materials, his "mere assertion of a religious belief [did] not automatically trigger First Amendment protections." (Mot. at 12.)

There is no assertion that Reed's requested accommodations are not "religious in nature." *DeHart*, 227 F.3d at 51. Whether Reed's beliefs are sincerely held is, stated simply, a factual dispute discounting dismissal of his claims at the pleading stage. Reed alleges as fact that he is an observant Jew and has been faithfully practicing his religion for half a decade. (Am. Compl. at 7.) He also alleged he was deemed to be Jewish when incarcerated by the Pennsylvania DOC and showed the Defendants a document to support that fact. Accordingly, the Motion is also denied as to Clevenstine's argument.

## IV. CONCLUSION

For the reasons stated, the Defendants' motion seeking to dismiss Reed's Amended Complaint will be denied and they will be directed to file an answer. Reed's motion for sanctions will be denied as well. An appropriate order follows.

**BY THE COURT:**

***/s/ John M. Gallagher***
**JOHN M. GALLAGHER, J.**